1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11    JOSE TRUJILLO,

12                    Plaintiff,

13         v.

14    PAUL GOGNA, et al.,

15                    Defendants.

16

17

18

|  |
|--|

Case No.  1:22-cv-00707-JLT-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

(ECF Nos. 13, 15)

**FOURTEEN DAY DEADLINE**

19         Currently before the Court is Plaintiff Jose Trujillo's ("Plaintiff") motion for default

20    judgment, filed on January 10, 2023. (ECF No. 13.)  No oppositions were filed and the deadline to

21    do so has now expired.  A hearing on the motion was held on February 22, 2023.  (See ECF No.

22    14.)  Counsel Tanya E. Moore appeared by videoconference on behalf of Plaintiff.  No appearances

23    were made on behalf of any of the Defendants.  (See ECF No. 14.)  Plaintiff's Counsel was unable

24    to refer to her notes and pleadings in this matter, due to a power outage that occurred prior to the

25    hearing.  Therefore, the Court granted Plaintiff leave to file supplemental briefing, as necessary, to

26    address the issues regarding service and ownership that were raised by the Court at the hearing on

27    Plaintiff's motion.  The deadline to file any supplemental briefings was set for noon on February

28    24, 2023.  Plaintiff timely filed supplemental briefing, which this Court has reviewed.  (ECF No.

15.)

Having considered the moving papers, the supplemental filing, the declarations and exhibits attached thereto, the arguments presented at the February 22, 2023 hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending Plaintiff's motion for default judgment be DENIED.

**I.**

**BACKGROUND**

A.      **Procedural History**

On June 10, 2022, Plaintiff initiated this action against Defendants Paul Gogna, doing business as Prince Food & Gas ("Gogna"); Huda-Cal. Properties, LLC ("Huda-Cal."); and Akbar Ali Huda ("Akbar Huda") (collectively, "Defendants").  (ECF No. 1.)  On June 24, 2022, Plaintiff filed an executed waiver of service of summons as to Defendant Huda-Cal.; on August 4, 2022, Plaintiff filed an executed proof of service of summons as to Defendant Akbar Huda; and on August 15, 2022, Plaintiff filed an executed proof of service of summons as to Defendant Gogna.  (ECF Nos. 4, 5, 6.)

Defendants did not respond to the complaint, and the Clerk of the Court entered default against Akbar Huda and Huda-Cal. on August 26, 2022 (ECF No. 8), and against Gogna on September 12, 2022 (ECF No. 11).

Plaintiff filed the instant motion against Defendants on January 10, 2023.  (ECF No. 13.) The hearing on the motion was held on February 22, 2023, with only Plaintiff's counsel appearing. Plaintiff submitted supplemental briefing on February 24, 2023.  (ECF No. 15.)

B.      **Plaintiff's Allegations**

The complaint asserts claims for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181–12189 (the "ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and Part 5.5 of the California Health and Safety Code §§ 19953 et seq. and/or Government Code § 4450 (denial of full and equal access to public facilities) against Defendants, the purported owners/operators/leasers of the facility "Prince Food & Gas" at 133 West Walnut Avenue, Visalia, California 93277 (the "Facility").  (ECF No. 1 at 1–2, 4–8.)  Plaintiff alleges Prince Food & Gas is

a store open to the public, intended for non-residential use, its operation affects commerce, and it is a "public accommodation" as defined by applicable federal and state laws. (Id. at ¶ 9 ; ECF No. 13-1 at 3.)

Plaintiff alleges he is substantially limited in his ability to walk, and must use a wheelchair or cane for mobility. (ECF No. 1 at ¶ 8.) Plaintiff lives less than five miles from the Facility. (Id. at ¶ 10.) He visited the Facility on March 9, 2022, to purchase fuel for his vehicle. (Id.) During the visit, Plaintiff alleges he encountered barriers that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility. (Id.) More specifically, Plaintiff identifies the following barriers:

> a) Plaintiff could not find a designated accessible fuel pump, and the pumps did not allow for payment at the pump. He honked several times to get the attention of the Facility's staff so that he could ask for fueling assistance but was ignored.
>
> b) Plaintiff looked for designated accessible parking so that he could unload in front of the Facility and go into the store to pay for his gas, but he could not find any designated accessible parking in the Facility's parking lot.
>
> c) Plaintiff could not see an accessible route from the gas pumps to the Facility entrance; there was a raised curb with unevenly sloped asphalt sloping up toward it, but no curb ramp. Deciding that the uneven slopes and height changes would make it too dangerous for him to attempt to enter the store, Plaintiff had to have his daughter go into the store to pay.

(Id. at ¶ 9 ; ECF No. 13-1 at 4–6.) Plaintiff alleges Defendants knew or should have known of the barriers, and that they have the financial resources to remove them but refuse to do so. (ECF No. 1 at ¶ 13.) Plaintiff claims the obviousness of the barriers is sufficient to establish discriminatory intent. (Id. at ¶ 15.)

As a result of the aforementioned barriers, Plaintiff contends the Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to him, and he was and continues to be deterred from visiting the Facility. (Id. at ¶ 12.) Plaintiff seeks injunctive relief, statutory damages, and attorneys' fees and costs. (Id. at 8–9; ECF No. 13-1 at 6–8.)

///

///

3

## II.

## LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
>> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>>
>>> (A) conduct an accounting;
>>>
>>> (B) determine the amount of damages;
>>>
>>> (C) establish the truth of any allegation by evidence; or
>>>
>>> (D) investigate any other matter.

Fed. R. Civ. P. 55.

The decision to grant a motion for entry of default judgment is within the discretion of the court.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may

consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel, 782 F.2d at 1471–72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

## III.

## DISCUSSION

The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine whether default judgment should be entered.

### A.     Jurisdiction

1.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  U.S. v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." Republican Party of Guam v. Gutierrez, 277 F.3d 1086,

1088 (9th Cir. 2002) (internal punctuation omitted) (quoting <u>Franchise Tax Bd. v. Constr. Laborers</u>

<u>Vacation Tr.</u>, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-

question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal

jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

pleaded complaint." <u>Republican Party of Guam</u>, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the ADA of 1990, 42 U.S.C. § 12101, *et*

*seq*.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  Because the Court has

original jurisdiction over Plaintiff's ADA claim, it also has the discretion to exercise supplemental

jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims under the Unruh Act,

California Civil Code §§ 51, *et seq.*, and Cal. Health & Safety Code §§ 19953, *et seq.*

2. <u>Service of Process on Defendants</u>

As a general rule, the Court considers the adequacy of service of process before evaluating

the merits of a motion for default judgment.  <u>See</u> <u>J & J Sports Prods., Inc. v. Singh</u>, No. 1:13-cv-

1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Penpower Tech. Ltd. v.</u>

<u>S.P.C. Tech.</u>, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); <u>Mason v. Genisco Tech. Corp.</u>, 960

F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action,

the default judgment is void and has no res judicata effect in this action.").  Service of the summons

and complaint is the procedure by which a court having venue and jurisdiction of the subject matter

of the suit obtains jurisdiction over the person being served.  <u>Miss. Publ'g Corp. v. Murphree</u>, 326

U.S. 438, 444–45 (1946); <u>see</u> <u>Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.</u>

<u>(Direct Mail)</u>, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over

a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

Service of a complaint in federal court is governed by  Rule 4.  Under Rule 4, an individual

may be served by: (1) delivering a copy of the summons and the complaint to that person personally;

(2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of

suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized

by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e)(2).

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives

6

sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food & Com. Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).   However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' "   Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986)).   "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted).   "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." SEC v. Internet Sols. for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

Rule 4 also permits service on an individual in accordance with state law. Fed. R. Civ. P. 4(e)(1).   California law permits substitute service by leaving a copy of the summons and complaint at the defendant's usual place of abode (i.e., dwelling), usual place of business, or usual mailing address (other than a U.S. Postal Service post office box).   Cal. Code Civ. Proc. § 415.20(b).   Copies of the summons and complaint must be left "in the presence of a competent member of the household or a person apparently in charge of [the defendant's] office, place of business, or usual mailing address," and copies must thereafter be mailed to the defendant at the same address where the documents were left. Id.

The Court shall examine the propriety of service as to each Defendant.[1]

**a.      Akbar Ali Huda**

On July 24, 2022, Plaintiff personally served a copy of the summons and complaint on Akbar Huda at 6:20 p.m. at his home address, 11190 Gates Terrace, Duluth, Georgia 30097.[2]   (ECF No. 5.)   On this record, the Court finds that service of process on Defendant Akbar Huda was proper.

///

---

[1] Plaintiff's counsel also determined and avers that Defendants are not minors, incompetent persons, or persons in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Relief Act of 1940. (Moore Decl. ¶ 2, ECF No. 13-2 at 1–4.)

[2] Plaintiff's counsel identified the residential address for Akbar Ali Huda as 11190 Gates Terrace, Duluth, Georgia 30097 through research on Lexis Advance public records database.   (Moore Decl. ¶ 14.)

1        **b.**     **Paul Gogna dba Prince Food & Gas**

2        On August 4, 2022, Plaintiff served a copy of the summons and complaint on Gogna by

3 substituted service, by leaving the documents with "Qumar DOE," the purported "Manager –

4 Person in Charge of Office." (ECF No. 6.) The service documents were left with DOE at 4:00

5 p.m. at the address 133 W. Walnut Ave, Visalia, California 93277 (id.), which Plaintiff indicates is

6 the address for the Facility (ECF No. 1 at 1). The service affidavit indicates "Qumar DOE" is "a

7 person at least 18 years of age apparently in charge of the office or usual place of business of the

8 person served." (ECF No. 6 at 2.) The affidavit also indicates DOE was "informed … of the

9 general nature of the papers." (Id.) Copies of the summons and complaint were also mailed to the

10 same address on August 5, 2022. (Id. at 3.)

11        The Court is unpersuaded that Plaintiff has properly effected service on Defendant Gogna.

12 Substitute service is permitted only "[i]f a copy of the summons and complaint cannot with

13 reasonable diligence be personally delivered to the person to be served[.]" See Cal. Civ. Proc. Code

14 § 415.20(b). "[T]he burden is upon the plaintiff to show reasonable diligence to effect personal

15 service and each case must be judged upon its own facts." Evartt v. Super. Ct., 89 Cal. App. 3d

16 795, 801 (Cal. Ct. App. 1979). "Although there is no established formula for reasonable diligence,

17 two or three attempts to personally serve defendant at a 'proper place' ordinarily qualifies as

18 'reasonable diligence.' " Johnson v. Bozorghadad, No. 17-cv-06536-HSG, 2020 WL 1245122, at

19 *3 (N.D. Cal. Mar. 16, 2020) (citation, internal quotation marks, and alteration omitted).

20        Here, the Court cannot discern that the process server demonstrated reasonable diligence in

21 attempting to personally serve Gogna before proceeding with substitute service. Neither the

22 executed summons nor the service affidavit indicates the process server made any prior attempts to

23 personally serve Gogna before the process server resorted to substituted service, nor does the

24 affidavit assert any other facts demonstrating reasonable diligence. Thus, reasonable diligence is

25 not established. Cal. Civ. Proc. Code § 415.20(b); Johnson v. Bozorghadad, No. 17-cv-06536-

26 SVK, 2020 WL 963377, at *4 (N.D. Cal. Feb. 28, 2020) (rejecting service not effected at correct

27 place of business); see also Bakersfield Hacienda, Inc. v. Superior Ct. In & For Kern Cnty., 199

28 Cal. App. 2d 798, 803–05 (Ct. App. 1962) (finding "utter failure to show any diligence whatsoever

in attempting to serve a corporate defendant by personal service on one of [its] officers" where service was only attempted on the general manager of the motel and not the general manager of the corporation).

Further, the Court is unpersuaded that DOE was the appropriate person for substituted service. The "apparently in charge" requirement is vital because, "[f]or substituted service to be reasonably calculated to give an interested party notice of the pendency of the action and an opportunity to be heard, service must be made upon a person whose relationship to the person to be served makes it more likely than not that they will deliver process to the named party." Produce v. Cal. Harvest Healthy Foods Ranch Mkt., No. C-11-04814 DMR, 2012 WL 259575, at *3 (N.D. Cal. Jan. 27, 2012) (internal quotation marks, alteration, and citations omitted). "[I]f service [is] improper, that may well explain the failure of a defendant to appear in a lawsuit." Folkmanis, Inc. v. Uptown Toys LLC, No. 18-cv-00955-EMC, 2018 WL 4361140, at *2 (N.D. Cal. Sep. 13, 2018) (internal quotation marks and citation omitted). "California courts and commonly used secondary sources have found that persons 'apparently in charge' may include secretaries, receptionists, and door keepers." Block v. Any Merced Inc., No. 1:21-cv-01251-NONE-EPG, 2022 WL 43695 (E.D. Cal. Jan. 5, 2022), report and recommendation adopted, No. 1:21-cv-01251-JLT-EPG, 2022 WL 198691, at *2 (E.D. Cal. Jan. 21, 2022) (citing Vasic v. Pat. Health, L.L.C., No. 13cv849 AJB (MDD), 2013 WL 12076475, at *3 (S.D. Cal. Nov. 26, 2013)). Here, however, the service affidavit's statement that DOE is "a person at least 18 years of age apparently in charge of the office or usual place of business of the person served" (ECF No. 6 at 2) is wholly conclusory (and appears boilerplate), as it does not include any facts to describe how substitute service was completed, specify whether DOE was "a competent member of the household" or a "person apparently in charge," or describe facts to support the process server's determination that DOE was "apparently in charge," and Plaintiff has provided no additional evidence.

Nor is the Court entirely persuaded that substitute service has been effectuated through a DOE[3] individual at the Facility, sufficient for default judgment to be entered against Defendant

---

[3] The Court notes the service affidavit indicates substitute service was purportedly effected on an individual named "Kumar DOE." An additional descriptor provided in the affidavit is "(I/M/45–55/5'5–6/160–190)," which appears to describe DOE's physical appearance relating to ethnicity, gender, age, height, and weight. The affidavit does not

Gogna.  See Coach Inc. v. Envy, No. 1:11-cv-1029 LJO GSA, 2012 WL 78238, at *2–3 (E.D. Cal. Jan. 10, 2012) ("Here, the proof of service indicates that Envy was served by leaving the summons at Defendant's place of business with 'Ninehra Babazade Ehsaralahn-store clerk (E IND., F., 21, BLK, 5'4 130 lbs).' ... There is no indication that the store clerk is authorized to receive service under F. R. Civ. P. 4(h)."); Floyd v. Saratoga Diagnostics, Inc., No. 20-CV-01520-LHK, 2020 WL 3035799, at *3 (N.D. Cal. Jun. 5, 2020) ("John Doe refused to identify himself, and thus Plaintiff was unable to ascertain whether John Doe was 'apparently in charge,' as required for substitute service to be effective under Cal. Code Civ. Proc. § 415.20(a) [substitute service on natural person]."); Dytch v. Bermudez, No. 17-cv-02714-EMC, 2018 WL 2230945, at *3 n.2 (N.D. Cal. May 16, 2018) ("Rather than re-serve the complaint, Plaintiff filed a revised proof of service from the process server which recites, in a formulaic and conclusory fashion, that John Doe was 'apparently in charge.'  The affidavit lacks factual detail.  It does not identify the particular person served ... Courts are also wary of proofs of service that do not identify on whom service was made because 'if no ... receiving individual is specified on the return of service, a movant [to set aside default judgment] has little or no basis on which to challenge the alleged service of process.' ") (quoting Homer v. Jones-Bey, 415 F.3d 748, 754 (7th Cir. 2005)) (bracketed alteration in original).

Relatedly, to the extent Plaintiff is attempting to serve the business Prince Food & Gas,[4] California law, like Rule 4, requires service on a corporate entity to be effected on the person designated as an agent for service of process, or the "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process."  Cal. Civ. Proc. Code § 416.10(a)–(b).  Mr. DOE does not appear to hold any of these positions with Prince Food & Gas, and there is no indication he is the designated agent for service of process for Prince Food & Gas.  To the extent the service

---

indicate whether Kumar was the individual's actual first name, or is meant to be a generic pseudonym.  No facts regarding the interaction between the process server and DOE, if any, are provided.

[4] The executed proof of service indicates service was effected on Paul Gogna dba Prince Food & Gas.  (ECF No. 6.)

affidavit indicates DOE is a "Manager" at the Facility (ECF No. 6 at 2), this is not equivocal to being the "general manager" of a company within the sense contemplated by California Code of Civil Procedure § 416.10, and California courts have held these job titles are not equivocal for purposes of effecting service on a corporate entity.   See, e.g., Bakersfield Hacienda, Inc., 199 Cal. App. 2d at 803–04 (providing extensive explanation of differences between the two positions in declining to find service on the "general manager" of hotel constituted personal service on the "manager" of the corporation that owned the hotel); see also Schagene v. Northrop Grumman, No. 11 CV 1642 AJB NLS, 2012 WL 216531, at *2–3 (S.D. Cal. Jan. 24, 2012) ("Under Rule 4(h)(1)(B), valid service of process requires 'delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment by law to receive service of process.' ... Even if Ms. Davis had been employed by Defendant as of the date of the attempted service of process, she was not an officer, managing or general agent, or an agent authorized by law to receive service of process on behalf of Defendant."); TMX Logistics, Inc. v. FF Trucking, Inc., No. CV 14-00873 PSG (ASx), 2014 WL 12691618, at *1–2 (C.D. Cal. Sept. 5, 2014) ("However, neither the declaration nor the relevant proof of service indicates that (1) Eduardo Fernandez, agent of FF Logistics, was personally served; or that (2) Celeste Aguila is 'an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process' on behalf of FF Logistics.").   On this basis, DOE is not the proper party for service with respect to the entity Prince Food & Gas.

Finally, the service affidavit states in conclusory fashion that the process server "informed him/her of the general nature of the papers," but no facts are proffered to demonstrate DOE actually understood the significance of the documents being handed to him, or that he was required to forward the documents to Defendant Gogna.   Indeed, the Court is skeptical that much of a conversation between the process server and DOE occurred, in light of the fact that the process server was unable to ascertain DOE's name.   "This requirement is critical because if [the person who is "apparently in charge"] did not know or understand the significance of the documents that [the process server] handed him, the documents may have ended up in a junk pile or recycling bin, rather than in [the defendant's] hands."   Bouyer v. 603 San Fernando Rd., LLC, No. CV-20-3853-

1    MWF (PVCx), 2020 WL 7711840, at *2 (C.D. Cal. Nov. 2, 2020).

2        At the hearing on the motion, the Court directed Plaintiff to file supplemental briefing to

3 address the service issue regarding Defendant Gogna.  In his supplemental briefing, Plaintiff

4 concedes Gogna was served at his business address rather than his residential address; nonetheless,

5 Plaintiff reiterates his contention that "service was properly effected under Rule 4(e)(1), which

6 allows for service pursuant to state law [and] California law permits substituted service upon an

7 individual by leaving a copy of the summons and complaint at the person's usual place of business,

8 in the presence of a person apparently in charge, and by thereafter mailing a copy of the summons

9 and complaint by first class mail …."[5]  (ECF No. 15 at 2 (citing Cal. Code of Civ. Proc. §

10 415.20(b)).)

11        Notably, Plaintiff's statement that "service was properly effected … pursuant to state law"

12 fails to acknowledge the due diligence requirement under Cal. Code of Civ. Proc. § 415.20(b).  The

13 statement is also conclusory and therefore does not substantively address the Court's concerns

14 identified above with respect to service on a DOE, demonstrable due diligence on the part of the

15 process server to effect personal service prior to attempting substituted service, or the failure to

16 include facts sufficient to establish the DOE upon which service was effected was "apparently in

17 charge," or sufficiently apprised of the nature of the service documents so as to ensure their prompt

18 delivery to Gogna.  See Bouyer, 2020 WL 7711840, at *2.

19        Based on this record, the Court lacks sufficient information to conclude that adequate

20 service has been made on Defendant Gogna.

21        **c.**      **Huda-Cal. Properties, LLC**

22        As to Huda-Cal. Properties, LLC, counsel for this Defendant, Steven R. Williams, signed a

23 waiver of service of summons on June 20, 2022.[6]  (ECF No. 4.)  As noted in the waiver of the

---

24
25 [5] In apparent anticipation of this Court's findings, Plaintiff additionally states in his supplemental briefing, "[i]n the event that the Court finds service was not properly effected on Paul Gogna, Plaintiff requests that Paul Gogna be dismissed from the action so that judgment may be entered against the remaining defendants."  (ECF No. 15 at 2.)

26
27 [6] The Court notes the California Secretary of State's website lists Mr. Williams as the agent authorized to accept service of process for Huda-Cal. Properties, LLC.  Business search results for Huda-Cal. Properties, LLC (Entity No. 201231010110), https://bizfileonline.sos.ca.gov/search/business (last visited Feb. 14, 2023); see Fed. R. Evid. 201(b) (courts may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and
28 readily determined from sources whose accuracy cannot reasonably be questioned."); Daniels –Hall v. National Educ.

service of summons, Huda-Cal. Properties, LLC acknowledged receipt of the summons and complaint. (Id.)  On this record, the Court finds that service of process on Defendant Huda-Cal. was proper.

In sum, the Court finds service was properly effected on Defendants Akbar Huda and Huda-Cal., but service is not adequate as to Defendant Gogna.  Accordingly, the Court recommends denying Plaintiff's motion for default judgment without prejudice for inadequate service of the summons and complaint with respect to Defendant Gogna, but shall proceed to consideration of whether the Eitel factors would otherwise weigh in favor of granting Plaintiff's motion for default judgment as to Defendants Akbar Huda and Huda-Cal.

**B.    Evaluation of the Eitel Factors in Favor of Default Judgment**

For the reasons discussed herein, the Court finds that consideration of the Eitel factors weighs against granting default judgment.

1.    Possibility of Prejudice to Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012).  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because Plaintiff does not have any other way to recover against Defendants.  See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).  This factor weighs in favor of default judgment against Defendants Akbar Huda and Huda-Cal.

2.    Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover."  PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  DIRECTV,

---

Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) (courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein); No Cost Conf., Inc. v. Windstream Commc'ns, Inc., 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013) (noting courts routinely take judicial notice of information contained in the California Secretary of State's website).  The Court also notes Huda-Cal. Properties, LLC is currently on suspended license status.

Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007).  As mentioned, the complaint asserts claims under the ADA, the Unruh Act, and the California Health and Safety Code.  Plaintiff's motion addresses only the claims for violation of the ADA and the Unruh Act, however, which are analyzed herein.

The Court previously summarized the allegations contained in the operative complaint and supporting documents that were submitted in support of the motion for default judgment.  The Court incorporates Section I here by way of reference.

    **a.**    **ADA**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation.  42 U.S.C. § 12182(a).  "Discrimination" is defined as a failure to make reasonable modifications in policies, practices, or procedures, when modification is necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."  Id. § 12182(b)(2)(A)(ii).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  Facilities include "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104.  Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable."  Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

14

A private party is only entitled to injunctive relief under Title III of the ADA, however, the ADA gives the court discretion to award attorney fees to the prevailing party.  Molski, 481 F.3d at 730.

i.       Whether Plaintiff is Disabled Within the Meaning of the ADA

Plaintiff must allege that he is disabled under the ADA.  Molski, 481 F.3d at 730.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking, standing, and hearing. 42 U.S.C. § 12102(2)(A).  An individual who is substantially limited in his ability to walk is disabled under the ADA.  42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk, and uses a wheelchair or cane for mobility.  (ECF No. 1 at ¶ 8.)  Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

ii.      Whether Defendants Own, Lease, or Operate a Place of Public Accommodation

Plaintiff must allege each Defendant "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); Molski, 481 F.3d at 730.

1)       Place of Public Accommodation

As an initial matter, the Court finds the Facility, Prince Food & Gas, is a place of public accommodation.  This is supported by Plaintiff's allegations (ECF No. 1 at ¶¶ 9–10), and the ADA, which provides that a "gas station" is considered a public accommodation.   42 U.S.C. § 12181(7)(F).

2)       Owns, Leases, or Operates

The Court is not persuaded, however, that Plaintiff has sufficiently asserted well-pleaded facts or submitted evidentiary support for the legal conclusion that Defendants Akbar Huda or Huda-Cal. Properties, LLC own, lease, or operate the Facility so as to be properly named Defendants in this action.

As to Defendant Akbar Huda, Plaintiff proffers that Akbar Huda owns the real property on which the Facility is located.  (Moore Decl. ¶ 14.)  In support of this assertion, Plaintiff submits a

15

grant deed relating to two lots of real property located in the City of Visalia, California.  (Ex. D, ECF No. 13-3 at 13–14.)  The parcels, however, do not include any street address, but are instead described by lot and tract numbers as recorded in the book of maps in the office of the County Recorder of Tulare County.  (See id.)  No further documents or explanation are provided to establish a connection between the property described in the grant deed and Prince Food & Gas, located at 133 W. Walnut Ave., Visalia, California, 93277.  Thus, Plaintiff has not established that Prince Food & Gas is located on the land described in the attached grant deed.  See Gilbert v. Shahi Assocs., Inc., No. 1:21-cv-01375-DAD-SAB, 2022 WL 1557162, at *8–10 (E.D. Cal. May 17, 2022) (finding plaintiff failed to establish ownership based on same lack of connection between grant deed and postal address), report and recommendation adopted in part, rejected in part, 2022 WL 3908549 (E.D. Cal. Aug. 30, 2022) (adopting findings related to property ownership); cf. Johnson v. Fernandez, No. 5:21-cv-04114-EDJ, 2022 WL 2829883, at *5 (N.D. Cal. Jul. 20, 2022) (public records at Dkt. No. 35-7, which expressly included business address as well as APN of property, sufficient to establish ownership of property by defendants in ADA case).

Furthermore, even if the property on which the Facility is located and that described in the grant deed preponderate to be one and the same, the Court cannot conclude from the grant deed that Akbar Huda is the owner of the real property identified in the deed because, to the contrary, the Grant Deed indicates that Defendant Akbar Huda, along with co-owner wife, Fazia S. Huda, granted the property to Huda-Cal. Properties, LLC in 2012.  (See ECF No. 13-3 at 13.)  Thus, Akbar Huda did not own the property at any time relevant to the instant litigation.

Finally, the Court notes Plaintiff produced a copy of the California Department of Alcoholic Beverage Control ("ABC") report for Prince Food & Gas, which expressly states Paul Gogna, but no other person or entity is the "Primary Owner" of Prince Food & Gas, located at 133 W. Walnut Ave., Visalia, California, 93277.  (Moore Decl. ¶ 15, ECF No. 13-2; Ex. E, ECF No. 13-3 at 16–17.)  On this record, the Court cannot conclude the pleadings show Defendant Akbar Huda "owns, leases, or operates" the Facility so as to be a properly named Defendant in this action.

For similar reasons, the Court cannot conclude Plaintiff has met his burden of establishing that Defendant Huda-Cal. Properties, LLC "owns, leases, or operates" the Facility so as to be a

1   properly named Defendant in this action.  As noted, Plaintiff has established Huda-Cal became the

2   owner of the real property described in the grant deed executed in 2012.  Plaintiff has not, however,

3   established the Facility is located on the real property described in the grant deed; nor has he

4   established that Huda-Cal. continued to remain owner of the real property identified in the grant

5   deed after 2012 and at all times (in 2022–2023) relevant to the instant litigation.  Furthermore, the

6   ABC report for Prince Food & Gas identifies Paul Gogna, not Huda-Cal, to be the "Primary Owner"

7   of Prince Food & Gas.  (ECF No. 13-3 at 16–17.)

8        At the hearing on the motion, Plaintiff was directed to submit supplemental briefing to

9   address the Court's concern regarding establishing ownership of the property as to the Huda

10  Defendants.  In his supplemental briefing, Plaintiff merely states he "provided evidence from public

11  records supporting his unchallenged allegations that [the Huda Defendants] own and operate the

12  subject facility, and argues the Court must, on default judgment, accept all of Plaintiff's factual

13  allegations as true.  (ECF No. 15 at 1 (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th

14  Cir. 1977).)  Plaintiff does not, however, elaborate on this statement, which is conclusory.  Thus,

15  Plaintiff fails to substantively address the Court's concerns regarding ownership, which were raised

16  at the hearing after the Court had reviewed Plaintiff's motion and attached public records.

17       Plaintiff's argument that the Court must accept his allegation as true is similarly conclusory

18  and unpersuasive.  Without further explanation, Plaintiff cites to the 1977 Geddes case for the

19  general statement that "[t]he general rule of law is that upon default the factual allegations of the

20  complaint, except those relating to the amount of damages, will be taken as true."  Plaintiff's

21  reliance on Geddes, however, is misplaced.  As noted in the slightly more recent Ninth Circuit

22  ruling, DIRECTV, Inc., "a defendant is not held to admit facts that are not well-pleaded or to admit

23  conclusions of law."  DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks and citations

24  omitted).

25       In DIRECTV, Inc., the Ninth Circuit found that DIRECTV's allegation that the appellees

26  "knowingly manufactured, assembled, sold, distributed, or modified an electronic, mechanical or

27  other device or equipment knowing, or having reason to know, that the device or equipment is used

28  primarily in the assistance of the unauthorized decryption of satellite programming, or direct-to-

home services, or is intended for any other prohibited activity," which merely parroted the language of the statue were not well-pleaded fact, but simply legal conclusions.  Id.  As such, the allegation was not deemed admitted through default, and the district court's refusal to grant default judgment was affirmed on the basis that the appellant had failed to state a claim.  Similarly here, Plaintiff's allegation regarding ownership and operation of the Facility is a legal conclusion that must be established through the pleadings.  See id.; see also Shanghai Hai Bi Cultural Media Co., Ltd v. Pac W. Distrib. Corp., No. CV 13-3620-CBM(Ex), 2015 WL 13918988, at *3 (C.D. Cal. Jan. 14, 2015) (in trademark case, denying default judgment based on finding that the plaintiff failed to adequately allege ownership of the trademark where it merely parroted the language of the law); U.S. v. RiverCliff Farm, Inc., No. 3:16-CV-1248-SI, 2017 WL 3388172, at *2 (D. Or. Aug. 7, 2017) (denying original default judgment motion due to failure to establish ownership of property in which quiet title action was pending).  For the reasons previously discussed, the Court finds that the pleadings and public records submitted by Plaintiff do not demonstrate the Huda Defendants own or operate the property on which the Facility exists.  Plaintiff's conclusory statement does not address that concern.

Accordingly, taking only the well-pleaded allegations as true for purposes of default judgment (and not unsupported conclusions of law), DIRECTV, Inc., 503 F.3d at 854, the Court finds Plaintiff has not sufficiently alleged that Defendants Akbar Huda or Huda-Cal. Properties, LLC, own or operate the Facility (Prince Food & Gas), which is a place of public accommodation. Plaintiff has therefore failed to establish this element of his ADA claim as asserted against Akbar Huda and Huda-Cal.  On this basis, the Court finds granting default judgment against Defendants Akbar Huda and Huda-Cal is inappropriate.

      iii.      <u>Whether Plaintiff Was Denied Public Accommodations Because of His Disability, due to an Architectural Barrier Prohibited Under the ADA</u>

      1)      Whether Denial of Access Was Due to Disability

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff alleges he could not find a designated accessible fuel pump at the Facility, and the pumps did not allow for payment at the

pump.  (ECF No. 1 at ¶ 10(a).)  Plaintiff honked several times to get the attention of the Facility's staff so he could ask for fueling assistance, but was ignored.  (Id.)  Plaintiff alleges he looked for designated accessible parking so that he could unload in front of the Facility and go into the store to pay for his gas, but he could not find any designated accessible parking in the Facility's parking lot.  (Id. at ¶ 10(b).)  And Plaintiff alleges he could not see an accessible route from the gas pumps to the Facility entrance, only a raised curb with unevenly sloped asphalt; Plaintiff maintains the height changes would make it too dangerous for him to attempt to enter the store.  (Id. at ¶ 10(c).)  Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established he was denied access to the Facility due to his disability.

> 2)      Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).  "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

Plaintiff proffers that because no discovery has occurred, he does not know if the Facility was constructed or had any alteration done after March 15, 2012, and therefore will apply the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the Facility.  (ECF No. 13-1 at 4.)  However, Plaintiff submits — and the Court agrees — that the 2010 Standards now in effect will govern any injunction which issues though, since the remedial work will be undertaken after March 15, 2012.  (Id.)

As noted above, Plaintiff alleges he was unable to go into the store to pay for gas due to

barriers to access, and he was ignored by staff when he honked several times. Plaintiff does not identify any ADAAG violation pertaining to being ignored by staff; nor does he establish staff ignored Plaintiff due to his disability. However, it appears the Facility's failure to provide a designated accessible parking stall, a level access aisle next to such a stall, and an accessible route of travel from the designated accessible parking to the Facility entrance is in violation of 1991 ADAAG §§ 4.6.3, and 4.3.8, and 2010 Standards §§ 502.4, and 303.

The Court notes that even on default judgment in ADA cases, plaintiffs often present the results of an investigation by an independent consultant, such as a construction expert that takes measurements, or at least a more detailed declaration of the plaintiff in support of the claim that there is an architectural barrier. Such details do not appear in the instant motion. Nonetheless, taking the allegations as true for purposes of default judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which violate the ADA.

iv.    Whether Removal of the Barrier Is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C § 12181(9). Factors to be considered in determining whether such removal is readily achievable include: "(A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." Id. Federal regulations provide examples of readily achievable steps to remove barriers, including: installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a turnstile or

1   providing an alternative accessible path, and creating designated accessible parking spaces, among

2   other examples.  28 C.F.R. § 36.304(b).

3        The Ninth Circuit has adopted the burden-shifting framework set forth by the Second

4   Circuit in Roberts v. Royal Atlantic Corporation, 542 F.3d 363 (2d Cir. 2008), to determine who

5   bears the burden of proving that removal of an architectural barrier is readily

6   achievable.  See Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1034–39 (9th Cir. 2020).

7   Under this burden-shifting analysis, the plaintiff bears the initial burden of "plausibly showing"

8   that a proposal for removing a barrier is readily achievable, and then the burden shifts to the

9   defendant with respect to the ultimate burden of persuasion on an affirmative defense that removal

10   of a barrier is not readily achievable.  See id.

11        Applying this burden-shifting framework here, Plaintiff has met his initial burden to

12   plausibly show that removal of certain identified barriers at the gas pump, in the parking lot and in

13   front of the Facility are readily achievable.  Plaintiff maintains Defendants can easily remove the

14   barriers without much difficulty or expense, as the uneven ground and lack of access to the store

15   can be completed by installing a curb cut ramp.  (ECF No. 13-1 at 5–6.)  Further, federal regulations

16   provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible

17   parking spaces."  28 C.F.R. § 36.304(b)(18).  Courts have observed that such listed items are

18   "examples of readily achievable steps to remove barriers" and found similar allegations to those

19   alleged here sufficient at the default judgment stage.  Johnson v. Garlic Farm Truck Ctr. LLC, No.

20   20-cv-03871-BLF, 2021 WL 2457154, at *5–6 (N.D. Cal. Jun. 16, 2021) (correcting uneven surface

21   slopes between parking spaces and access aisles is readily achievable); Johnson v. Altamira Corp.,

22   No. 16-cv-05335 NC, 2017 WL 1383469 (N.D. Cal. Mar. 27, 2017), report and recommendation

23   adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017) (deficient travel

24   paths from disabled parking spaces to entrance of facility).  The Court does not find, however, that

25   Plaintiff has plausibly shown that installing and maintaining a bell/buzzer or other communication

26   device at the fuel pumps and/or to implement a policy whereby employees are trained to assist

27   customers with fueling upon request is similarly readily achievable, Lopez, 974 F.3d at 1034–39,

28   and Plaintiff identifies no authority or reference to the ADAAG in support of this proposition.

Based on the foregoing, the Court finds Plaintiff has met his burden to plausibly show that a proposal for removing certain identified barriers is readily achievable.  Id.  The burden thus shifts to Defendants to show that removal of the identified barriers is not readily achievable.  Here, Defendants have not appeared in or defended this action.  Thus, Defendants have failed to meet their burden.

In sum, the Court finds Plaintiff has met his burden of stating a prima facie claim for discrimination under Title III against the Defendant owners of the Facility.  Plaintiff is thereby entitled to injunctive relief for the violations of the ADA as asserted against these Defendants.

**b.      Unruh Act**

Plaintiff also brings a state law claim for violations of the Unruh Act.  Pursuant to the Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability.  Cal. Civ. Code § 51.5.  Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski, 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 … also constitutes a violation of this section.").  Thus, the Unruh Act incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code § 51(f).

Here, Plaintiff alleges Defendants denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability.  (ECF No. 1 at 7–8.)  Because the complaint properly alleges a prima facie claim under the ADA against the Defendant owners of the Facility, the Court finds Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Act claim as against the Defendant owners of the

Facility.

For the reasons set forth above, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against the Defendant owners of the Facility.

3.      The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, the sum of money at stake in this action weighs in favor of granting default judgment. Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions. G & G Closed Cir. Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the third Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."). In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount of $2,844.00, and costs of $1,251.92, for a total award of $8,095.92. (ECF No. 13-1 at 6–8.) This is not an excessive amount of money, nor does it seem unreasonable in light of the allegations contained in the complaint. See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small award of damages").

Further, even in the event of a finding that default judgment is appropriate, the Court would recommend the attorneys' fees be reduced. Accordingly, this factor does not weigh against entry of default judgment.

4.      The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of dispute concerning material facts. As

discussed previously, Plaintiff has not met his burden of establishing all elements of his ADA and Unruh Act claims as asserted against Defendants Akbar Huda or Huda-Cal. Properties, LLC.  Thus, the Eitel factors do not support granting default judgment against them.[7]

     5.      Whether the Default was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendants' default resulted from excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.  Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment as Defendants Akbar Huda and Huda-Cal. Properties, LLC have failed to file a responsive pleading or otherwise appear in this action.  See Shanghai Automation Instrument Co., 194 F. Supp. 2d at 1005 ("The default of defendant … cannot be attributed to excusable neglect.  All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

     6.      The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  The Court finds this factor weighs in favor of granting default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

In conclusion, the Court finds default judgment is inappropriate as to Defendant Gogna

---

[7] Furthermore, the Court previously found the proofs of service were insufficient to demonstrate Defendant Gogna was properly served; on this basis, the fifth Eitel factor weighs against default judgment as to all Defendants.

because Plaintiff failed to establish proper service of process on Gogna; however, default judgment is inappropriate as to Defendants Akbar Huda and Huda-Cal. Properties, LLC because Plaintiff failed to establish these Defendants own, lease, or operate the Facility so as to be properly named Defendants in this action.  Therefore, the Court finds Plaintiff's motion for default judgment should be denied as to each Defendant.

## C.     Requested Relief

As previously noted by the Court, in addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount of $2,844.00, and costs of $1,251.92, for a total award of $8,095.92.  (ECF No. 13-1 at 6–8.) However, because the Court finds Plaintiff's motion for default judgment should be denied as to each Defendant, it does not reach the issue of requested relief.

## IV.

## CONCLUSION AND RECOMMENDATIONS

The entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court finds service to be inadequate as to Defendant Paul Gogna, doing business as Prince Food & Gas; further, the Court finds Plaintiff fails to establish Defendants Huda-Cal. Properties, LLC and Akbar Ali Huda own, lease, or operate the Facility so as to be properly named Defendants in this action.  Accordingly, the Court recommends the motion for default judgment be denied as asserted against all Defendants without prejudice.

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's motion for default judgment (ECF No. 13) be DENIED.

Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the Defendants at that Defendant's last known address.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge

will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 28, 2023**

_____
UNITED STATES MAGISTRATE JUDGE