1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRUJILLO,<br><br>       Plaintiff,<br><br>   v.<br><br>PAUL GOGNA, et al.,<br><br>       Defendants. | Case No.  1:22-cv-00707-JLT-SAB<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**ORDER REQUIRING SERVICE ON DEFENDANTS WITHIN THREE DAYS**<br><br>(ECF No. 24)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

19
20
21
22
23
24

    Currently before the Court is Plaintiff Jose Trujillo's ("Plaintiff") motion for default judgment, filed on May 23, 2024.  (ECF No. 34.)  Plaintiff seeks default judgment against Defendants Paul Gogna dba Prince Food & Gas and Huda-Cal Properties, LLC.  A hearing on the motion was held on July 2, 2024.  (ECF No. 40.)  Counsel Tanya E. Moore appeared by videoconference on behalf of Plaintiff.  No appearances were made on behalf of either Defendant via videoconference or in person, despite the courtroom being open to the public.

25
26
27
28

    Having considered the moving papers, the declarations and exhibits attached thereto, the argument presented at the July 2, 2024 hearing, the nonappearance of the Defendants, and the Court's file, the Court recommends granting Plaintiff's motion for default judgment, subject to a reduction in attorneys' fees.

# I.

## BACKGROUND

### A.        Procedural History

On June 10, 2022, Plaintiff initiated this action against Defendants Paul Gogna, doing business as Prince Food & Gas ("Gogna"); Huda-Cal. Properties, LLC ("Huda-Cal."); and Akbar Ali Huda ("Huda").  (ECF No. 1.)  Because no Defendant responded to the complaint, Plaintiff requested entry of default against each Defendant.  (ECF Nos. 7, 8, 10, 11.)

On January 10, 2023, Plaintiff filed his initial motion for default judgment.  (ECF No. 13.)  On March 1, 2023, the Court recommended the motion be denied without prejudice, finding (1) service was inadequate as to Gogna and (2) Plaintiff failed to establish Huda and Huda-Cal. owned, leased, or operated Prince Food & Gas at 133 West Walnut Avenue, Visalia, California 93277 (the "Facility") so as to be a properly named defendants in the action.  (ECF No. 16.)  On March 27, 2023, the District Judge adopted the findings and recommendations.  (ECF No. 18.)

On February 5, 2024, the Court granted Plaintiff an extension of time to complete service on Gogna and either seek to amend the complaint to cure the indicated defects or dismiss Huda and Huda-Cal. as Defendants in the action no later than March 22, 2024.  (ECF No. 19.)

On February 20, 2024, Plaintiff filed a notice of voluntary dismissal as to Huda.  (ECF No. 20.)  Huda was dismissed from the action on February 21, 2024.  (ECF No. 22.)

On February 21, 2024, Plaintiff filed a motion for leave to file a first amended complaint to assert claims against Gogna and Huda-Cal. (collectively, "Defendants").  (ECF No. 21.)  No oppositions were filed.  Accordingly, on March 14, 2024, the Court granted Plaintiff's motion and afforded Plaintiff a thirty-day extension to serve Gogna and Huda-Cal.  (ECF No. 24.)  On March 19, 2024, Plaintiff filed a first amended complaint.  (First Amended Compl. ("FAC"), ECF No. 25).  On April 8, 2024, Plaintiff filed proofs of service on Defendants.  (ECF Nos. 26, 27.)

Neither Defendant responded to the complaint, and, upon Plaintiff's request (ECF No. 29), the Clerk of the Court entered default against Gogna and Huda-Cal. on April 30, 2024.  (ECF Nos. 30, 31.)   On May 23, 2024, Plaintiff filed the instant motion for default judgment against Defendants.  (ECF No. 34.)

1     As discussed, the Court held a hearing via videoconference on July 2, 2024, whereby only

2     counsel for Plaintiff appeared   (ECF No. 40.)   On July 16, 2024, Plaintiff filed supplemental

3     briefing regarding issues of service, providing the status of the entity "Prince Food & Gas," and

4     clarifying Plaintiff's injunction request.  (ECF No. 41.)

5     **B.**        **Allegations in the Operative Complaint**

6     The FAC asserts claims for violations of the Americans with Disabilities Act of 1990, 42

7     U.S.C. §§ 12181–12189 (the "ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and

8     Part 5.5 of the California Health and Safety Code §§ 19953 et seq. and/or Government Code §

9     4450[1] against Defendants, the purported owners/operators/leasers of the Facility.  (FAC ¶¶ 7-9.)

10    Plaintiff alleges the Facility is a store open to the public, intended for non-residential use, its

11    operation affects commerce, and is a "public accommodation" as defined by applicable federal and

12    state laws.  (Id. at ¶ 11; ECF No. 34-1 at 3.)[2]

13    Plaintiff alleges he is substantially limited in his ability to walk and uses a wheelchair or

14    cane for mobility.  (FAC ¶ 10.)  Plaintiff lives less than five miles from the Facility.  (Id. ¶ 12.)

15    Plaintiff visited the Facility on March 9, 2022, to purchase fuel for his vehicle.  (Id.)  During the

16    visit, Plaintiff alleges he encountered barriers that interfered with and denied his ability to use and

17    enjoy the goods, services, privileges, and accommodations offered at the facility.  (Id.)   More

18    specifically, Plaintiff identifies the following barriers:

19            a) Plaintiff could not find a designated accessible fuel pump, and
20               the pumps did not allow for payment at the pump. He honked
                 several times to get the attention of the Facility's staff so that he
21               could ask for fueling assistance but was ignored.

22            b) Plaintiff looked for designated accessible parking so that he could
                 unload in front of the Facility and go into the store to pay for his
23               gas, but he could not find any designated accessible parking in
24               the Facility's parking lot.

25            c) Plaintiff could not see an accessible route from the gas pumps to
                 the Facility entrance; there was a raised curb with unevenly

26    

27    [1] Plaintiff does not seek default judgment over his third cause of action arising under the California Health and Safety Code.

28    [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

3

sloped asphalt sloping up toward it, but no curb ramp. Deciding that the uneven slopes and height changes would make it too dangerous for him to attempt to enter the store, Plaintiff had to have his daughter go into the store to pay.

(Id.; ECF No. 34-1 at 4-6.)  Plaintiff alleges Defendants knew or should have known of the barriers, and that they have the financial resources to remove them but refuse to do so.  (FAC ¶ 15.)  Plaintiff claims the continued presence of the obviousness of the barriers is sufficient to establish discriminatory intent.  (Id. ¶ 17.)

As a result of the alleged barriers, Plaintiff contends the Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to him, and he was and continues to be deterred from visiting the Facility.  (Id. at ¶ 14.)  Plaintiff contends he will return to the Facility once the barriers are moved.  (Id.)  Plaintiff seeks injunctive relief, statutory damages, and attorneys' fees and costs.  (Id. at 2; ECF No. 34-1 at 7–9.)

**II.**

**LEGAL STANDARD**

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must

be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Id.

The decision to grant a motion for entry of default judgment is within the discretion of the court. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471–72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the

1   pleadings.  Fed. R. Civ. P. 54(c).

2   **III.**

3   **DISCUSSION**

4   The Court first determines whether the Court properly has jurisdiction in this matter, and

5   then turns to the <u>Eitel</u> factors to determine whether default judgment should be entered.

6   **A.   Jurisdiction**

7   1.   <u>Subject Matter Jurisdiction</u>

8   Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

9   that granted by Congress.  <u>U.S. v. Sumner</u>, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28

10   U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the

11   Constitution, laws, or treaties of the United States.' "A case 'arises under' federal law either where

12   federal law creates the cause of action or where the vindication of a right under state law necessarily

13   turns on some construction of federal law." <u>Republican Party of Guam v. Gutierrez</u>, 277 F.3d 1086,

14   1088 (9th Cir. 2002) (punctuation omitted) (quoting <u>Franchise Tax Bd. v. Constr. Laborers</u>

15   <u>Vacation Tr.</u>, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-

16   question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal

17   jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

18   pleaded complaint."  <u>Republican Party</u>, 277 F.3d at 1089 (citations omitted).

19   Plaintiff brings this action alleging violations of the ADA, 42 U.S.C. § 12101, *et seq*.

20   Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  Because the Court has

21   original jurisdiction over Plaintiff's ADA claim, it also has the discretion to exercise supplemental

22   jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims under the Unruh Act,

23   California Civil Code §§ 51, *et seq*.  Here, the Court recommends exercising supplemental

24   jurisdiction over Plaintiff's claim under the Unruh Act.

25   2.   <u>Service of Process on Defendants</u>

26   Generally, the Court considers the adequacy of service of process before evaluating the

27   merits of a motion for default judgment.  <u>See</u> <u>J & J Sports Prods., Inc. v. Singh</u>, No. 1:13-cv-1453-

28

6

LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action."); see Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."). The Court shall therefore examine the propriety of service as to each Defendant.

### a. Paul Gogna dba Prince Food & Gas

Plaintiff argues he served a copy of the summons and complaint on Gogna on March 28, 2024, by substituted service by leaving the documents with "John Doe," a "Guard at the Gate of Paul Gogna…." (ECF No. 26.) The service documents were left with Doe at 6:12 p.m. at Gogna's residence located at 5925 W Elowin Drive in Visalia, California. (Id.; Decl. Tanya Moore Supp. Mot. Default. J. ("Moore Decl."), ECF No. 34-2 ¶ 20, Ex. I.) The service affidavit indicates Doe was "informed of the contents and nature of the documents and whose age is 18 years or older." (ECF No. 26 at 1.) Copies of the summons and complaint were also mailed to the same address on March 28, 2024. (Id.)

Plaintiff submits that Gogna was served in compliance with Rule 4(e)(1) and California Civil Code of Procedure 415.20(b). (ECF 34-1 at 11.) Under Rule 4(e)(1), an individual may be served pursuant to state law. Fed. R. Civ. P. 4(e)(1). California Civil Code of Procedure 415.20(b) governs service on individuals via substitute service. Substitute service is permitted only "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served[.]" Cal. Civ. Proc. Code § 415.20(b). "[T]he burden is upon the plaintiff to show reasonable diligence to effect personal service and each case must be judged upon its own facts." Evartt v. Super. Ct., 89 Cal. App. 3d 795, 801 (Cal. Ct. App. 1979).

Here, Plaintiff argues substitute service on the unnamed "Guard at the Gate of Paul Gogna" is proper under section 425.20(b). Plaintiff avers that after two attempts to serve Gogna at home, the process server was refused entry to the gated community by the gate guard, and therefore left the documents with the gate guard after informing him of the contents. (ECF 34-1 at 11.) In support

of his argument that service was properly effected on the gate guard, Plaintiff relies on Bein v. Brechtel-Jochim Group, Inc., 6 Cal.App.4th 1387 (1992).  There, the California Court of Appeal determined that substitute service of a summons and complaint on a company and its shareholders at the shareholders' residence was appropriately effected when the process server was denied access to the residence by an unnamed gate guard stationed at the community's entrance.  Id. at 1390-91, 1393-94.  After multiple attempts, the process server left the documents with the gate guard, who threw them on the ground, but then retrieved them as the process server drove away.  Id. at 1391.  The plaintiff also mailed the documents to the same residence.  Id.  The court found substitute service to be effected because "the gate guard's relationship with [the defendants] made it more likely than not that he would deliver process to" them.  Id. at 1393-94.  The court reasoned that the guard "must be considered a competent member of the household and the person apparently in charge. [The defendants] authorized the guard to control access to them and their residence.  We therefore assume the relationship between [the defendants] and the guard ensures delivery of process."  Id. at 1393.  "Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access."  Id.

Similar to the defendants in Bein, Gogna appears to live in a gated community.  (ECF No. 26 at 1 ("Service to gate guard at private community refused entry").)  However, the process server's affidavit provides little facts regarding the "Guard at the Gate of Paul Gogna."  Further, the process server's notes provide boilerplate language and typographical errors, including an inconsistent geolocation for the March 25, 2024 service attempt on Gogna at his residence.  (ECF 26 at 3.)  Thus, at the July 2, 2024 hearing, the Court requested supplemental briefing from Plaintiff supporting proper service on Gogna.

In a supplemental brief filed on July 16, 2024, Plaintiff clarifies that the first two attempts at service resulted in the process server gaining entry to the community and attempting service at Gogna's residence, but there was no answer at the residence, and on the third attempt, the server was prevented from accessing the community by the gate guard.  (ECF No. 41 at 2.)  The process server then handed the documents to the gate guard and subsequently mailed the documents to Gogna's residential address.  (Id.)  Plaintiff provides additional documentation from the process

server, including a photograph of Gogna's residence during the March 25, 2024 attempt to support that the geolocation provided on the proof of service—which linked to Defendant Huda Cal's registered agent—was provided in error.  (ECF No. 41-2 at 5.)

The Court finds the process server's three attempts to effect service on Gogna satisfies the reasonable diligence requirement.  See Johnson v. Bozorghadad, No. 17-cv-06536-HSG, 2020 WL 1245122, at *3 (N.D. Cal. Mar. 16, 2020) ("Although there is no established formula for reasonable diligence, two or three attempts to personally serve defendant at a 'proper place' ordinarily qualifies as 'reasonable diligence.' " ) (citation, quotations, and alteration omitted). Although Plaintiff fails to provide more than barebones factual details about the gate guard and boilerplate language that the process server informed the gate guard of the contents and nature of the documents, "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).  Therefore, the Court finds that service was properly effected on Gogna.

**b.  Huda-Cal. Properties, LLC**

On March 27, 2024, Plaintiff served a copy of the summons and complaint on Huda-Cal.'s registered agent Steven R. Williams, an attorney, by substituted service on "Jovanna S," the purported "person in charge" as "Administration at Williams Broderson and Pritchett LLP" at 2222 W Main Street, Visalia, California 93291.  (ECF No. 27.)[3]  The process server also mailed the papers to Huda-Cal. on the same day, to the same address.  (Id.)  Plaintiff contends Huda-Cal. a California business entity, was served pursuant to Federal Rule of Civil Procedure 4(h)(1)(A) and California Code of Civil Procedure § 415.20(a).  (ECF No. 34-1 at 12.)

Service may be completed on a corporation or LLC by delivering a copy of the summons and complaint to the person designated as agent for service of process.  Cal. Code Civ. Proc. §

---

[3] The Court notes the California Secretary of State's website lists Mr. Williams, located at 2222 W Main Street, Visalia, California 93291, as the agent authorized to accept service of process for Huda-Cal. Properties, LLC. Business search results for Huda-Cal. Properties, LLC (Entity No. 201231010110), https://bizfileonline.sos.ca.gov/search/business (last visited June 4, 2024); see Fed. R. Evid. 201(b) (courts may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); Daniels–Hall v. National Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) (courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein); No Cost Conf., Inc. v. Windstream Commc'ns, Inc., 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013) (noting courts routinely take judicial notice of information contained in the California Secretary of State's website).

416.10(a).  As to the manner in which such service may be completed, California law provides that:

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in section 416.20…a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office…with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left….

Cal. Civ. Proc. Code § 415.20(a); see also Khourie, Crew & Jaeger v. Sabek, Inc., 220 Cal. App. 3d 1009, 1013 (1990).

Although the affidavit of service contains largely boilerplate language without many factual details as to how the process server knew Jovanna S. was the person in charge or otherwise authorized to receive service of process, the Court is satisfied service was properly effected under California's provisions for substitute service on a corporation pursuant to section 415.20(a) on Huda-Cal.[4]

In sum, the Court finds service was properly effected on Gogna and Huda-Cal. Accordingly, the Court shall proceed to consideration of whether the Eitel factors would weigh in favor of granting Plaintiff's motion for default judgment.

**B.  Evaluation of the Eitel Factors in Favor of Default Judgment**

For the reasons discussed herein, the Court finds that consideration of the Eitel factors weighs for granting default judgment.

1. Possibility of Prejudice Toward the Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment were not entered.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012).  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because Plaintiff does not have any other way to recover against Defendants.  See Vogel

---

[4] Plaintiff also avers that Mr. Williams, an attorney, has contacted counsel for Plaintiff "multiple times, including a phone call following service of the summons and First Amended Complaint in which Mr. Williams' staff confirmed receipt of the documents."  (Moore Decl. ¶ 22).

1  v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).   This factor weighs in favor

2  of default judgment against Defendants Gogna and Huda-Cal, LLC

3      2.  Merits of Plaintiff's Claims and Sufficiency of the Complaint

4      The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a

5  claim on which [they] may recover."  PepsiCo, Inc., 238 F. Supp. 2d at 1175.  As mentioned, the

6  complaint asserts claims under the ADA, the Unruh Act, and Health and Safety Code.  Plaintiff's

7  motion, however, only requests default judgment for the ADA and the Unruh Act.

8      **a.  ADA**

9      Title III of the ADA provides that "[n]o individual shall be discriminated against on the

10  basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is

11  defined as a failure to make reasonable modifications in policies, practices, or procedures, when

12  modification is necessary to afford such goods, services, facilities, privileges, advantages, or

13  accommodations to individuals with disabilities, unless modifications would fundamentally alter

14  the nature of such goods, services, facilities, privileges, advantages, or accommodations."  Id. §

15  12182(b)(2)(A)(ii).

16      "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

17  disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

18  operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

19  by the defendant because of her [or his] disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730

20  (9th Cir. 2007).  Facilities include "all or any portion of buildings, structures, sites, complexes,

21  equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other

22  real or personal property, including the site where the building, property, structure, or equipment is

23  located." 28 C.F.R. § 36.104.  Further, "[t]o succeed on an ADA claim of discrimination on account

24  of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing

25  facility at the defendant's place of business presents an architectural barrier prohibited under the

26  ADA, and (2) the removal of the barrier is readily achievable."  Hubbard v. 7-Eleven, Inc., 433 F.

27  Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065,

28  1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

A private party is only entitled to injunctive relief under Title III of the ADA; however, the ADA gives the court discretion to award attorney fees to the prevailing party.  Molski, 481 F.3d at 730.

i.     Whether Plaintiff is Disabled Within the Meaning of the ADA

Plaintiff must allege that he is disabled under the ADA.  Id.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking.  42 U.S.C. § 12102(2)(A).  An individual who is substantially limited in his ability to walk is disabled under the ADA.  42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk and uses a wheelchair or cane for mobility.  (FAC ¶ 10.)  Accepting the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA claim.

ii.     Whether Defendants Own, Lease, or Operate a Place of Public Accommodation

Plaintiff must allege each Defendant "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); Molski, 481 F.3d at 730.

1)     Place of Public Accommodation

As an initial matter, the Court finds the Facility is a place of public accommodation.  This is supported by Plaintiff's allegations (FAC ¶¶ 10-11) and the ADA, which provides that a "gas station" is considered a public accommodation.  42 U.S.C. § 12181(7)(F).

2)     Owns, Leases, or Operates

Plaintiff's complaint generally states, "Each of the Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation."  (FAC ¶ 7.)  Plaintiff avers the Facility is located on real property owned by Huda-Cal. and that the business is operated by Gogna.  (ECF No. 34-2.)  In support, Plaintiff proffers the Grant Deed for the Facility, evidencing that Huda-Cal owns the real property on which the Facility is located.  (Moore Decl. ¶ 17; Ex. F, ECF No. 34-3 at 20-44.)  Further, Plaintiff produced a copy of the California Department of Alcoholic Beverage Control report for Prince Food & Gas, which states Gogna is the "Primary Owner" of Prince Food & Gas, located at 133 W. Walnut Ave., Visalia, California, 93277.  (Moore Decl. ¶ 19; Ex. H, ECF No. 34-3 at 49-51.)

Taking the allegations as true for purposes of default judgment, and in consideration of the supporting declaration of counsel and the exhibits attached thereto, the Court finds Plaintiff has sufficiently alleged that the Defendants own or operate the Facility, a place of public accommodation.

  iii.  <u>Whether Plaintiff Was Denied Public Accommodations Because of His Disability, due to an Architectural Barrier Prohibited Under the ADA</u>

  1)  Whether Denial of Access Was Due to Disability

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  <u>Molski</u>, 481 F.3d at 730.  Here, Plaintiff alleges he could not find a designated accessible fuel pump at the Facility, and the pumps did not allow for payment at the pump.  (FAC ¶ 12(a).)  Plaintiff honked several times to get the attention of the Facility's staff so he could ask for fueling assistance but was ignored.  (<u>Id.</u>)  Plaintiff alleges he looked for designated accessible parking so that he could unload in front of the Facility and go into the store to pay for his gas, but he could not find any designated accessible parking in the Facility's parking lot.  (<u>Id.</u> at ¶ 12(b).)  Plaintiff further alleges he could not see an accessible route from the gas pumps to the Facility entrance, only a raised curb with unevenly sloped asphalt; Plaintiff maintains the height changes would make it too dangerous for him to attempt to enter the store.  (<u>Id.</u> at ¶ 12(c).)  Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established he was denied access to the Facility due to his disability.

  2) Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991.  <u>Id.</u>  (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the

13

design, construction, and alteration of such facilities.  Id.  (citing 28 C.F.R. Pt. 36, App. A). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

Plaintiff proffers that because no discovery has occurred, he does not know if the Facility was constructed or had any alteration done after March 15, 2012, and therefore will apply the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the Facility. (ECF No. 34-1 at 5.)  However, Plaintiff submits—and the Court agrees—that the 2010 Standards now in effect will govern any injunction which issues, since the remedial work will be undertaken after March 15, 2012.  (Id.)

As noted above, Plaintiff alleges he was unable to go into the store to pay for gas due to barriers to access, and he was ignored by staff when he honked several times.  Plaintiff does not identify any ADAAG violation pertaining to being ignored by staff; nor does he establish staff ignored Plaintiff due to his disability.  However, it appears the Facility's failure to provide a designated accessible parking stall, a level access aisle next to such a stall, and an accessible route of travel from the designated accessible parking to the Facility entrance is in violation of 1991 ADAAG §§ 4.6.3, and 4.3.8, and 2010 Standards §§ 502.4, and 303.

The Court notes that even on default judgment in ADA cases, plaintiffs often present the results of an investigation by an independent consultant, such as a construction expert that takes measurements, or at least a more detailed declaration of the plaintiff in support of the claim that there is an architectural barrier.  Such details do not appear in this instant motion.  Nonetheless, taking the allegations as true for purposes of default judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which violate the ADA.

iv.    Whether Removal of the Barrier Is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to be considered in determining whether such removal is readily achievable include:

"(A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity."

Id.  Federal regulations provide examples of readily achievable steps to remove barriers, including: installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a turnstile, or providing an alternative accessible path, and creating designated accessible parking spaces, among other examples. 28 C.F.R. § 36.304(b).

"All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is plausibly allege that the barrier's removal is readily achievable." Whitaker v. Sheikh, No. 21-CV-0493-KJM-KJN, 2022 WL 1262023, at *7 (E.D. Cal. Apr. 28, 2022).  If the defendant fails to plead an applicable affirmative defense, "the plaintiff is effectively entitled to judgment on the pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability, a covered public accommodation, and an architectural barrier encountered."  Id.; cf. Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020) (applying a burden-shifting analysis when evaluating evidence at the summary judgment stage wherein the plaintiff bears the initial burden of "plausibly showing" that a proposal for removing a barrier is readily achievable, and then the burden shifts to the defendant with respect to the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable).

Here, Plaintiff generally alleges that "Defendants can easily remove the barriers without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so."  (FAC ¶ 23.)  In the instant motion, Plaintiff maintains Defendants can easily remove the barriers without much difficulty or expense, as the uneven ground and lack of access to the store can be completed by installing a curb cut ramp.

1    (ECF No. 34-1 at 5-6.)

2         For purposes of default judgment, the Court accepts Plaintiff's allegations as true and finds

3    Plaintiff has plausibly alleged that removal of the architectural barriers he encountered is readily

4    achievable.  Federal regulations provide a non-exclusive list of steps to remove barriers, including

5    "[c]reating designated accessible parking spaces," and making curb cuts and installing ramps.  28

6    C.F.R. §§ 36.304(b)(1), (2), (18).  Courts have also observed that such listed items are "examples

7    of readily achievable steps to remove barriers" and found similar allegations to those alleged here

8    sufficient at the default judgment stage.  Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-

9    BLF, 2021 WL 2457154, at *5–6 (N.D. Cal. Jun. 16, 2021) (correcting uneven surface slopes

10   between parking spaces and access aisles is readily achievable); Johnson v. Altamira Corp., No.

11   16-cv-05335-NC, 2017 WL 1383469 (N.D. Cal. Mar. 27, 2017), report and recommendation

12   adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017) (deficient travel

13   paths from disabled parking spaces to entrance of facility).  Additionally, Courts have previously

14   concluded that providing a properly configured and identified accessible fuel pump is readily

15   achievable.  Trujillo v. Chaudhary, No. 122CV00969ADASKO, 2023 WL 6174992, at *7 (E.D.

16   Cal. Sept. 22, 2023), report and recommendation adopted, No. 122CV00969ADASKO, 2023 WL

17   6992035 (E.D. Cal. Oct. 23, 2023); Trujillo v. Malwa Food Mart Inc., No. 121CV01580AWIBAM,

18   2022 WL 1214849, at *8 (E.D. Cal. Apr. 25, 2022), report and recommendation adopted, No.

19   121CV01580AWIBAM, 2022 WL 2110518 (E.D. Cal. June 10, 2022).  Accordingly, the Court

20   finds Plaintiff has met his burden to plausibly show that a proposal for removing certain identified

21   barriers is readily achievable.

22        In sum, the Court finds Plaintiff has met his burden of stating a prima facie claim for

23   discrimination under Title III against the Defendant owner and operator of the Facility.  Plaintiff is

24   thereby entitled to injunctive relief for the violations of the ADA as asserted.

25        **b.  Unruh Act**

26        Plaintiff also brings a state law claim for violations of the Unruh Act.  Pursuant to the Unruh

27   Act, all persons are "entitled to the full and equal accommodations, advantages, facilities,

28   privileges, or services in all business establishments of every kind whatsoever."  Cal Civ. Code §

16

51(b).  Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability. Cal. Civ. Code § 51.5.  Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation. Cal. Civ. Code § 52(a); Molski, 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 … also constitutes a violation of this section."); See Vogel, 992 F. Supp. 2d at 1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5 (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at *1–4 (E.D. Cal. July 11, 2011).  Thus, the Unruh Act incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

Here, Plaintiff argues Defendants denied him full and equal accommodations, advantages, facilities, privileges, and services in a business establishment based on his disability.  (ECF No. 34-1 at 4.)  Because the complaint properly alleges a prima facie claim under the ADA against the both the owner and operator of the Facility, the Court finds Plaintiff has also adequately alleged facts establishing the necessary elements for an Unruh Act claim.

Accordingly, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against Huda Cal. and Gogna, as owner and operator of the Facility.

3.   The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, the sum of money at stake in this action weighs in favor of granting default judgment.  Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions. G & G Closed Cir. Events, LLC v. Nguyen, No.

3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc., 238 F. Supp. 2d at 1176 ("Under the third Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").

In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees in the amount of $4,799.00, and costs of $837.43, for a total award of $9,636.43.  (ECF No. 34-1 at 6–8.)  This is not an excessive amount of money, nor does it seem unreasonable considering the allegations contained in the complaint. See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small award of damages"). Further, the Court recommends the attorneys' fees be reduced, as discussed below.  Accordingly, this factor does not weigh against default judgment.

### 4.   The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of a dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the Unruh Act by demonstrating his encountering of architectural barriers at the Facility.  The Court finds this factor weighs in favor of entering default judgment as there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendants' default.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc., 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").  Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

### 5.   Whether the Default was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendants' default resulted from excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the

paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment as Defendants Paul Gogna and Huda-Cal. Properties, LLC have failed to file a responsive pleading or otherwise appear in this action, including attending the hearing on the motion for default judgment.  See Shanghai Automation Instrument Co., 194 F. Supp. 2d at 1005 ("The default of defendant … cannot be attributed to excusable neglect. All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

6.   The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  The Court finds this factor weighs in favor of granting default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").  Accordingly, the Court finds the policy favoring decisions on the merit does not preclude entering default judgment against Defendants under these circumstances.

In conclusion, the Court finds default judgment is appropriate as to Gogna and Huda-Cal. Therefore, the Court recommends Plaintiff's motion for default judgment be granted as to each Defendant.

**C.  Requested Relief**

As previously noted, in addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees in the amount of $4,799.00, and costs of $837.43, for

a total award of $9,636.43.  (ECF No. 34-1 at 6–8.)  The Court recommends reducing the award of attorneys' fees for the reasons discussed below.

### 1.   Injunctive Relief

Plaintiff seeks an injunction compelling Defendant to comply with the ADA by removing the itemized barriers that Plaintiff personally encountered.  (FAC 8; Mot. 7.)  The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA.  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought pursuant to this section is independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law.").  "Injunctive relief may be granted 'when architectural barriers at defendant's establishment violate the ADA.' "  Johnson v. Pizano, No. 2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting Vogel, 992 F.Supp.2d at 1015).

Pursuant to federal and California law, Plaintiff is entitled to the removal of those architectural barriers which he encountered on his visit to the Facility that violated the ADA.  Therefore, an injunction should issue requiring Defendant to remove barriers that are in violation of the ADA and the ADAAG.

### 2.   Statutory Damages

Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages may be recovered if a violation of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.  Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

As discussed above, Plaintiff sufficiently alleged violation of the ADA which established a

1  violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages
2  in the amount of $4,000.00.

3       3.      Attorneys' Fees and Costs

4       Plaintiff is requesting attorneys' and paralegals' fees in the amount of $4,799.00, and costs
5  in the amount of $837.43.  (ECF No. 34-1 at 6–8.)  Pursuant to 42 U.S.C. § 12205, the party that
6  prevails on a claim brought under the ADA may recover "a reasonable attorney's fee, including
7  litigation expenses," at the discretion of the Court.  "[U]nder federal fee shifting statutes the lodestar
8  approach is the guiding light in determining a reasonable fee."  Antoninetti v. Chipotle Mexican
9  Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations omitted).  The
10 Ninth Circuit has explained the lodestar approach as follows:

11           The lodestar/multiplier approach has two parts.  First a court
12           determines the lodestar amount by multiplying the number of hours
             reasonably expended on the litigation by a reasonable hourly rate.
             The party seeking an award of fees must submit evidence supporting
13           the hours worked and the rates claimed.  A district court should
             exclude from the lodestar amount hours that are not reasonably
14           expended because they are excessive, redundant, or otherwise
             unnecessary.  Second, a court may adjust the lodestar upward or
15           downward using a multiplier based on factors not subsumed in the
             initial calculation of the lodestar. The lodestar amount is
16           presumptively the reasonable fee amount, and thus a multiplier may
             be used to adjust the lodestar amount upward or downward only in
17           rare and exceptional cases, supported by both specific evidence on
             the record and detailed findings by the lower courts that the lodestar
18           amount is unreasonably low or unreasonably high.

19
20 Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations and
   punctuation omitted).
21
22      Under the lodestar method, the court will first determine the appropriate hourly rate for the
23 work performed, and that amount is then multiplied by the number of hours properly expended in
24 performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make
25 adjustments to the number of hours claimed or to the lodestar but is required to provide a clear but
26 concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  The
27 lodestar amount is to be determined based upon the prevailing market rate in the relevant
28 community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

a. **Reasonable hourly rate**

Counsel Tanya Moore ("Moore") has been in practice for over twenty years, with over ten years spent almost exclusively in disability access litigation, and her current billing rate is $650.00. (Moore Decl. ¶ 6.)  However, Moore is only seeking an hourly rate of $300.00 for her work on this matter.  (Id.)  Moore is also seeking an hourly rate of $115.00 for the work of paralegals Whitney Law ("Law") and Isaac Medrano ("Medrano"), despite normally billing at a higher rate in the Northern District of California, where the firm is located.  (Id. at ¶¶ 8-9.)

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.

This Court has previously found $300.00 per hour to be a reasonable rate for Moore.  See, e.g., Gilbert v. HBA Enterprises, Inc., No. 121CV01358JLTSAB, 2022 WL 2663761, at *17 (E.D. Cal. July 11, 2022).  Further, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years.  See, e.g., Cervantes v. Vargas, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 116CV00650LJOSKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases). Accordingly, the Court recommends that Plaintiff receive the requested $300.00 per hour for the services of Moore.

The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of the paralegals, as the Court has previously found the rate to be reasonable.  See, e.g., HBA Enterprises, Inc., 2022 WL 2663761, at *17; see also Durham v. FCA US LLC, No. 2:17-cv-

00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00.").

**b.    Reasonable number of hours**

Counsel Moore billed 10.4 hours on this matter; Law billed a total of 11.5 hours; and Medrano billed a total of 3.1 hours.  (ECF No. 34-1 at 8; Moore Decl. at ¶¶ 11-13.)

As a preliminary matter, the initial filed complaint included a third Defendant, Akbar Huda, who has since been voluntarily dismissed from this matter.  (ECF No. 22.)  The instant motion does not refer to a cost delineation between Gogna, Huda-Cal, and Akbar Huda.  Plaintiff provides no explanation as to why billing entries expressly related to Akbar Huda should be reasonably imposed on Gogna or Huda-Cal.  Accordingly, as discussed in further detail below, the Court finds the reduction of all hours related to Akbar Huda is reasonable given Plaintiff voluntarily dismissed Akbar Huda as a defendant in this action.  See Trujillo v. Taco Riendo, Inc., No. 1:21-cv-01446-JLT-SAB, 2022 WL 2236932, at *17 (E.D. Cal. June 22, 2022) (reducing all paralegal and attorneys' fees for work on a dismissed defendant's case in a motion for default judgment).

Turning to the specific time entries, the Court finds the following billing entries to be duplicative in nature: Law and Moore's July 13, 2022 entries, each for 0.2 hours, regarding issues with service and Law's April 1, 2024 entries, the first for 0.5 hours and the second for 0.1 hours, to review the affidavit of service for Defendant Gogna.  (ECF No. 34-3 at 2-27.)  The Court therefore recommends a reduction in fee awards for the above entries: Law's July 13, 2022 entry be reduced to 0 hours and Law's April 1, 2024 entry for 0.1 hours be reduced to 0 hours.

The Court finds the following billing entries to be clerical in nature, and therefore will reduce the fee awards for those entries accordingly: (1) Medrano's June 14, 2022 entry from 0.3 hours to 0 hours to review the scheduling order and set deadlines; (2) Medrano's January 11, 2023 entry from 0.1 hours to 0 hours to set deadlines; (3) Medrano's February 22, 2023 and February 23, 2023 entries from 0.2 hours to 0 hours for reviewing minutes to calendar; (4) Medrano's March 3, 2023 entry from 0.1 hours to 0 hours to review the findings and recommendations to set deadlines; (5) Law's February 6, 2024 entry, where Law in part billed to "calendar MSC and note to file re preparation of JSR from 0.3 hours to 0.2; (6) Law's March 29, 2024 entry from 0.2 hours

1    to 0.1 hours, where in part Law billed for calendaring; (7) Law's April 8, 2024 entry from 0.3 hours

2    to 0.1 hours, where Law in part billed for calendaring; (8) Law's April 18, 2024 from 0.2 hours to

3    0 hours, where Law billed for review of an unspecified order continuing the scheduling conference

4    and calendaring a new deadline.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989)

5    ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who

6    performs them"); see also Block v. Narwal, Case No. 1:22-cv-00597-ADA-EPG, 2022 WL

7    17455502, at *11 (E.D. Cal. December 6, 2022) (awarding no fee for Medrano's boilerplate entry

8    wherein he spent ".3 hours 'Review[ing] order setting scheduling conference to calendar hearing

9    date, set deadline to complete Rule 26 call, and deadline to file joint scheduling report'" due to its

10   clerical nature.).  Because the Court finds the above-mentioned entries consist of purely clerical

11   work or secretarial tasks, the Court recommends the above reductions.

12        Further, it is unreasonable for Moore to bill for preparation of CCDA reports, as previous

13   courts have found that such a task is purely clerical and one a non-attorney could perform at a much

14   lower cost.  See, e.g., Block v. Alzamzami, Case No. 1:23-cv-00061-JLT-SKO, 2024 WL 664463

15   (E.D. Cal. February 16, 2024).  As such, the Court recommends no fee be awarded for Moore's

16   June 15, 2022 and April 5, 2023 entries related to preparation of CCDA reports.  Relatedly, the

17   Court finds it unreasonable to require Gogna and Huda-Cal to reimburse Law's March 27, 2024

18   entry stating an error on CCDA site and therefore recommends reducing the entry from 0.3 hours

19   to 0 hours. (ECF No. 34-3 at 5.)

20        Further, between May 5, 2022 and June 10, 2022, Moore expended 3.9 hours

21   communicating with the client, with the private investigator, and performing other investigation

22   and review in relation to the drafting and filing of the complaint.  (Ex. A, ECF No. 34-3 at 2.)

23   However, "[b]ased upon the Court's familiarity with the actions filed by Ms. Moore's firm in this

24   court, the Court is aware that [Moore uses a] form complaint [that] is substantially similar to dozens

25   of other actions filed in this district," and previously found "time billed [to be] excessive and

26   duplicative and .5 hours would be a reasonable amount of time for Ms. Moore to spend on

27   preparing, researching, reviewing, and drafting the complaint."  Trujillo v. Lakhani, No. 1:17–cv–

28   00056–LJO–SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8, 2017).  Here, the Court finds 3.9

1    hours in relation to the initiation and filing of the complaint to be excessive given the almost entirely

2    routine nature of the complaint and thus recommends reasonably reducing Moore's May 5, 2022

3    through June 10, 2022 entries to 0.5 hours.

4         On June 9, 2022, Law expended 0.8 hours in pre-complaint filing research to, in part,

5    "identify *defendants* and location for service." (Ex. A ECF No. 34-3 at 2 (emphasis added).)  This

6    billing entry fails to delineate between dismissed and defaulted defendants, therefore the Court

7    finds a reduction of 0.4 hours to be reasonable.  Accordingly, the Court finds a reduction to 0.5

8    hours to be reasonable for these tasks.

9         Plaintiff's counsel filed two separate requests for entry of default, with the first on August

10   25, 2022, against Defendants Huda-Cal and Huda, and the second on September 12, 2022, against

11   Defendant Gogna.  On August 24, 2022, Medrano billed 0.2 hours on the request for entry as it

12   relates to Defendant Gogna.  (ECF 34-3 at 3).  On August 25, 2022, Medrano billed 0.3 hours on

13   the service certificate for the request for entry of default, which does not delineate between

14   Defendants.  (Id.)  On August 30, 2022, Medrano billed 0.1 hours drafting a letter after the default

15   against Defendant Huda was granted.  (Id.)  Moore billed an aggregate 0.8 hours on the entry of

16   default: On August 24, 2022, Moore billed 0.4 hours to prepare the request for entry and to review

17   the file, and on August 25, 2022 Moore billed 0.4 hours for "[c]orrespondence with opposing

18   counsel" and to give instructions on the request for entry of default.  (Id.)  However, Plaintiff's first

19   entry and subsequent motion for default were denied against Defendant Gogna due to improper

20   service, and Defendant Huda was voluntarily dismissed.  Plaintiff provides no explanation as to

21   why billing entries related to the first entry of default against Defendant Gogna and now-dismissed

22   Defendant Huda should be reasonably imposed on the defaulted defendants.  See Stockfood

23   America, Inc. v. Sequoia Wholesale Florist, Inc., Case No. 20CV03507DMR, 2021 WL 4597080,

24   at *9 (N.D. Cal. June 22, 2021) (denying awarding Plaintiff fees for the time its attorneys spent on

25   initial requests for default which were denied due to improper service because "Defendant should

26   not be charged for Plaintiff's litigation errors").  The Court finds it unreasonable to require Gogna

27   and Huda-Cal to reimburse Plaintiff for the fees incurred in connection with Plaintiff's improper

28   service and subsequent entry of default against Gogna and dismissed Defendant Huda.  Therefore,

1   the Court recommends reducing Medrano's August 24, 2022 entry in its entirety; Moore's August

2   24, 2022 entry from 0.4 hours to 0.1 hours; Medrano's August 25, 2022 entry from 0.3 hours to 0.1

3   hours; Moore's August 25, 2022 entry from 0.4 hours to 0.2 hours; Medrano's August 30, 2022

4   entry in its entirety.

5        Between October 24, 2022 and January 5, 2023, Medrano billed a total of 1.3 hours drafting

6   portions of the initial motion for default judgment and performing other clerical tasks.  (Id. at 3-4.)

7   On January 4, 2023, Law billed 0.3 hours to review substantive portions of the motion.  (Id. at 3)

8   Moore then billed for a cumulative 2.7 hours between October 24, 2022 and January 9, 2023 related

9   to the initial motion.  (Id. at 4.)  Because the initial motion is nearly identical to motions for default

10  judgment filed by Moore in other actions before this court—including the instant motion—the

11  Court finds 1 hour of total paralegal time and 0.5 hour of Moore's time to be reasonable for drafting

12  and review of the initial motion for default judgment and associated materials.[5]  See, e.g., Trujillo,

13  2022 WL 2236932, at *17.

14       On February 5, 2024, the Court granted an extension of time to either (1) seek leave to

15  amend the complaint in order to cure the defects with respect to Defendants Huda-Cal and Huda or

16  dismiss those Defendants by March 22, 2024.  (ECF No. 19.)  Between February 6, 2024 and

17  February 21, 2024, Law billed 3.1 hours toward reviewing the February 5, 2024 order, without

18  delineating between amending the complaint and voluntarily dismissing Defendant Huda.  (ECF

19  No. 34-3 at 4-5.)  The Court finds the following entries to be related to dismissed Defendant Huda,

20  and therefore recommends reducing the fees accordingly: Law's February 16, 2024 entry from 1.60

21  hours to 1.1 hours, given the billing included, in part, "prepar[ing] notice of dismissal of Huda

22  without prejudice"; Law's February 20, 2024 entry from 0.8 hours to 0.4 hours, given the billing

23  included, in part, "finalize and file dismissal of Huda"; and Law's February 22, 2024 entry

24  _____

[5] The Court reiterates the initial default judgment was denied due to (1) inadequate service as to Defendant Gogna and

25  (2) failure to establish Defendants Huda or Huda-Cal owns, leases, or operates Prince Food & Gas so as to be a properly
    named Defendant.  (ECF No. 18.)  Because Plaintiff re-filed the substantially same motion as the instant motion—only

26  removing some mentions of former defendant Huda, adding two paragraphs at the introduction, and updating
    attachments and attorneys' fees, paralegal fees, and costs—the Court recommends granting a reduction of these hours,

27  given Plaintiff only bills for the revisions to the instant motion rather than billing for re-drafting the motion.  But see
    Stockfood America, Inc., 2021 WL 4597080, at *9 (recommending deducting all hours billed by counsel in preparing

28  previously denied motions for default judgment because defendants should not be charged for a plaintiff's litigation
    errors.)

1   "review[ing] order dismissing Huda" from 0.1 hours to 0.  (Id.)

2        Following reduction of the billing entries related to dismissed Defendant Huda and the

3   clerical entries as discussed, Law's aggregate billing from February 6, 2024 to February 21, 2024

4   related to the amended complaint include 2.1 hours.  (ECF No. 34-3 at 4-5.)  On February 16, 2024,

5   Moore also billed 1.4 hours in preparation of the motion to amend.  (Id. at 5.)  The Court finds that

6   the cumulative 3.5 hours spent on a motion to amend and an amended complaint to be unreasonable

7   and finds that a reduction is appropriate because Plaintiff's amendments were minor.  As far as the

8   complaint itself, the original and amended complaint are substantially similar; for example, Huda,

9   mentioned twice, is removed from the amended complaint and that in the amended complaint, each

10  Defendant is listed under "Parties" in their own paragraph.  (See ECF No. 1 and 25.)  Akin to

11  preparing the initial complaint, the Court finds .5 hours to be a reasonable amount of time for Moore

12  to spend on preparing the amended complaint.  Therefore, the Court reduces Moore's February 16,

13  2024 entry from 1.4 hours to 0.5 hours, to allocate for time to prepare the motion to amend and

14  time for Moore to review the previous complaint as included with the motion to amend.  Further,

15  the Court finds Law's February 16, 2024 entry is duplicative of her March 1, 2023 and February 6,

16  2024 entries and therefore recommends reducing the February 16, 2024 entry to 0.6 hours.

17       On May 14, 2024, Law billed 1.3 hours to prepare the updated motion for default judgment

18  and the supporting declarations, and on May 22, 2024, Law billed an additional 0.5 hours to

19  "[f]inalize the updated motion for defaulted judgment."  (ECF No. 34-3 at 6.)  As explained above,

20  the Court has recommended 1 hour of total paralegal time and 0.5 hours of Moore's time is

21  reasonable as to the time spent drafting the initial motion for default judgment, which is essentially

22  identical to the instant motion for default judgment.  The Court finds awarding an additional 1.8

23  hours of paralegal time to a substantially similar substantive motion with generally identical

24  declarations and exhibits to be excessive, given the first motion for default judgment was denied

25  due to Plaintiff's litigation errors. See Stockfood America, Inc., 2021 WL 4597080, at *9.  Because

26  the Court has already recommended one hour of paralegal time for drafting and compiling the initial

27  motion for default, which was denied for Plaintiff's litigation errors, the Court recommends

28  reducing Law's aggregate 1.8 hours on May 14, 2024 and May 22, 2024 to one hour.

The Court finds the remaining billing entries to have been reasonably expended by Plaintiff's representation. Totaling the above reductions, the Court finds that a reduction of 8 hours is reasonable for Moore, a reduction of 1.8 hours is reasonable for Medrano, and a reduction of 3.8 hours is reasonable for Law.

The Court additionally recommends allocating 0.2 hours for the time Moore expended preparing for and attending the July 2, 2024 hearing, which lasted for less than 10 minutes, and allocates to Moore 0.5 hours for time spent drafting the supplemental briefing.

**c.      Costs**

Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $402.00 for filing fees; $170.00 for the March 2024 service expense on the defaulting defendants only; $238.91 in investigative fees; and $26.52 in postage (Moore Decl. ¶¶ 13-16, Exs. B-E.)  The Court finds such costs have been reasonably expended in association with this litigation.

**d.      Reasonable Attorneys' Fee Award and Costs**

Accordingly, the Court finds that Medrano reasonably expended 1.3 hours in this litigation; Law reasonably expended 7.7 hours in this litigation, and Moore reasonably expended 3.1 hours in this litigation.  The Court therefore recommends awarding Plaintiff $1,965.00 in reasonable attorneys' fees.  The Court further recommends awarding Plaintiff $837.43 in costs.

**IV.**

**CONCLUSION AND RECOMMENDATIONS**

The Eitel factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  Aldabe, 616 F.2d at 1092.

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1.   Plaintiff's motion for default judgment (ECF No. 34) be GRANTED:

2.   Plaintiff be awarded statutory damages in the amount of $4,000.00;

3.   Plaintiff be awarded attorneys' fees in the amount of $1,965.00;

4.   Plaintiff be awarded costs in the amount of $837.43; and

5. Plaintiff be GRANTED an injunction requiring Defendants, within six (6) months of entry of the order, to provide disability access by making the following modifications to the property known as known as Prince Food & Gas, located at 133 West Walnut Avenue, Visalia, California 93277 ("the Facility"), such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, by:

    a. Provide a properly configured and identified accessible fuel pump;

    b. Provide a properly configured and identified accessible parking stall and adjacent access aisle; and

    c. Provide a properly configured accessible route of travel from the designated accessible fuel pump to the Facility entrance served by a properly configured accessible curb ramp.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Further, Plaintiff is HEREBY ORDERED to serve a copy of these findings and recommendations on Defendants within three (3) days of entry.

IT IS SO ORDERED.

Dated: **July 25, 2024**

UNITED STATES MAGISTRATE JUDGE

29